IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT CHRISTOPHER L.,[1]                    Case No. 3:23-cv-01159-JR

      Plaintiff,                                         OPINION AND ORDER

      v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

RUSSO, Magistrate Judge:

      Plaintiff Scott L. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND[2]

Born in January 1974, plaintiff alleges disability beginning March 7, 2020, due to bipolar disorder, anxiety, and attention-deficit/hyperactivity disorder ("ADHD"). Tr. 250-51, 274. His application was denied initially and upon reconsideration. On October 26, 2022, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 40-64. On November 7, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 23-34. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2025," and had "not engaged in substantial gainful activity since March 7, 2020." Tr. 25. At step two, the ALJ determined the following impairments were medically determinable and severe: "bipolar, anxiety disorder, ADHD." Tr. 26. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. *Id*.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform work at all exertional levels but with the following non-exertional limitations:

> [He can] understand, remember, and carry out simple instructions, can deal with occasional changes in a routine work setting, [c]an use judgment to make simple work related decisions, [c]annot perform work requiring a specific production rate (such as assembly line work), and is able to tolerate frequent contact with supervisors, and occasional contact with coworkers and the general public.

---

[2] The record before the Court constitutes nearly 1000 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

Tr. 27.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work. Tr. 33. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy that plaintiff could perform despite his impairments, such as cleaner, landscaper, and housekeeper. Tr. 33-34.

## DISCUSSION

Plaintiff argues the ALJ erred by rejecting the July 2020 medical opinion of treating nurse practitioner Shauna Hahn.[3] Where, as here, the claimant's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[4] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or.

---

[3] Plaintiff attempts to bolster his position by relying on the records of Marie McCoy, M.D. and Daniel Scharf, Ph.D. Pl.'s Opening Br. 3, 6, 14. Plaintiff, however, does not challenge the ALJ's rejection of certain facets of Dr. Scharf's opinion on appeal, nor does he allege any error in regard to Dr. McCoy's treatment notes except insofar as he asserts that the ALJ "failed to acknowledge Dr. McCoy's existence despite the fact that she began treating Plaintiff in May 2015." *Id.* at 14. Dr. McCoy is not a mental health specialist, and only managed plaintiff's medications briefly and prior to his initiation of treatment with Ms. Hahn. Tr. 436-44. In any event, the ALJ is "not required to formally assess, or even discuss" medical records such as Dr. McCoy's that do not contain any concrete functional limitations, as they are "not probative as to what kind of work [the claimant can] perform despite his impairment." *Corso v. Colvin*, 2014 WL 950029, *10 (D. Or. Mar. 11, 2014). Similarly, the Court need not address issues that are not "specifically and distinctly raised in [the claimant's] opening brief." *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012).

[4] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e.,

Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

Plaintiff established care with Ms. Hahn on June 23, 2020, shortly after undergoing in-patient treatment. Tr. 867-70; *see also* Tr. 373-74 (psychiatric hospitalization during the last week of March 2020 due to hypomania), 789-96 (discharge from residential program in May 2020 following one month of treatment for the "main conditions" of "severe stimulant use disorder, cocaine" and "severe cannabis use disorder"). On July 9, 2020, Ms. Hahn completed a "Mental Capacity Assessment" at the request of plaintiff's attorney. Tr. 850-52.

Ms. Hahn listed plaintiff's diagnoses as bipolar disorder, most recent episode "manic [with] psychosis," and "alcohol dependence, in remission." Tr. 850. She then checked boxes reflecting plaintiff was "moderately/markedly" or "markedly"[5] limited in his ability to: recognize a mistake and correct it, identify and solve problems, use reason and judgment to make work-related decisions, work at an appropriate and consistent pace, complete tasks in a timely manner, ignore or avoid distractions while working, work close to or with others without interrupting or distracting them, sustain an ordinary routine and regular attendance, work a full day without needing more than the allotted number or length of rest periods, adapt to changes, manage psychologically based symptoms, set realistic goals, and keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. Tr. 850-52. And plaintiff was "moderately" limited in his

---

"clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

[5] "Moderate" means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is fair"; "marked" means "[y]our functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." Tr. 850.

Page 4 – OPINION AND ORDER

ability to: follow one- or two-step instructions, sequence multi-step activities, make plans independently of others, handle conflicts with others, and respond to requests, suggestions, criticism, correction, and challenges. *Id.* She did not provide any narrative descriptions on this form but did refer to plaintiff's recent treatment records as the basis of her assessment. *Id.*

The ALJ found Ms. Hahn's July 2020 opinion "not persuasive" because it "was made shortly after she began treating [plaintiff], which implies that Ms. Hahn did not have much of a basis for giving a reliable opinion on [his] long-term functioning." Tr. 32. Additionally, the ALJ determined "Ms. Hahn's treatment notes provide limited support for her opinion," explaining:

> She described [plaintiff as] having poor memory, but she noted that [he] had only mildly tangential thought process. Her treatment also showed reports of getting along with others, and being busy with working and other activities, which does not support more than moderate limitations in mental work activities. Moreover, in a June 2021 statement, Ms. Hahn noted that [plaintiff's] mood had been stable for 9-12 months, his intellectual and organizational abilities were intact, he had minor memory limitations, he was socially appropriate, he had no impairments in activities of daily living, and he had no current psychosis. The description of the [plaintiff's] symptoms and functioning in the mid-2021 statement is inconsistent with Ms. Hahn's opinion from mid-2020.

Tr. 32-33. Finally, the ALJ resolved "Ms. Hahn's July 2020 opinion is also inconsistent with the reports of improved symptoms and functioning, the relatively routine course of mental health treatment since May 2020, the appropriate interactions with providers since mid-2020, the March 2021 mental status examination, and [plaintiff's] activities of daily living such as helping to start a business, spending time with friends, doing housework, preparing meals, and shopping in stores." Tr. 33.

"A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Likewise, the ALJ may afford less weight to a medical opinion that is inconsistent with the claimant's daily activities. *Id.* at 1162.

Page 5 – OPINION AND ORDER

Here, substantial evidence supports the ALJ's decision. An independent review of the record reveals that, in the months following his completion of residential treatment in Texas, plaintiff's symptoms were more significant as he adjusted to sobriety and his medication regime. For instance, Ms. Hahn frequently described plaintiff as depressed, with impaired insight and judgment. *See, e.g.*, Tr. 853-70, 912-21. And, on August 12, 2020 – i.e., approximately one month after she completed the "Mental Capacity Assessment" – Ms. Hahn denoted that plaintiff's "anxiety and depression have both increased to the range of severe," such that she questioned whether he "is work-ready, even if he could secure employment," given that his "window of tolerance is so small." Tr. 912-13.

However, within three months of initiating care with Ms. Hahn, plaintiff's symptoms began to improve. Notably, plaintiff reduced his treatment sessions from weekly to every "2-3 months," interviewed for work, travelled, started a business with his wife, remained physically and mental active, and engaged as both a parent, partner, son, and friend. Tr. 785, 787-88, 890-95, 922-31. Accordingly, Ms. Hahn's chart notes described plaintiff's anxiety and depression as "mild," and observed that his insight and judgement had "improved." *See generally id.*

And, on June 29, 2021, Ms. Hahn completed a "Mental Disorder Questionnaire Form," indicating that plaintiff had experienced "9-12 months . . . of mood stability" since his "hospitalization in 03/2020." Tr. 782-85. Overall, she characterized "ongoing mild anxiety [and] mild depression," and "some symptoms of inattention, despite being treated for ADHD." Tr. 782, 784-85. But plaintiff was experiencing "no perceptual disturbances or current psychosis," and his grooming and hygiene, and intellectual and organizational skills, were "intact." Tr. 782, 784. He also possessed "normal intelligence – minor memory impairments, secondary to either long term

alcohol dependence or ADHD [symptoms]."[6] Tr. 783. In terms of attitude and behavior, plaintiff was "open, pleasant, optimistic, mildly anxious" and "socially appropriate," respectively. *Id.* He had "no impairments in ADLS," fished and golfed with friends, and worked at the franchise "[he] + his wife have purchased." Tr. 784-85.

At that time, Ms. Hahn indicated that plaintiff's symptoms had improved with treatment, social supports ("a lot of friends, engaged parents" and "supportive wife + daughters"), "start[ing] his own business," and being "more active." Tr. 782, 785. As such, the only work-related limitation articulated by Ms. Hahn was that plaintiff "may have [a] reduced stress tolerance following manic break in 03/2020." Tr. 785; *see also Collum v. Colvin*, 2014 WL 3778312, *4 (D. Or. July 30, 2014) (ALJ is "not required to incorporate limitations phrased equivocally into the RFC" – i.e., those prefaced with "might," "may," or "likely") (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009)). In sum, the ALJ did not commit reversible error in evaluating Ms. Hahn's July 2020 opinion.

---

[6] Plaintiff's briefing focuses largely on his memory issues, attributing Ms. Hahn's July 2020 limitations thereto. Pl.'s Opening Br. 3, 12-15. Yet plaintiff relies almost exclusively on evidence that post-dates Ms. Hahn's June 2021 opinion or pre-dates his initiation of treatment with Ms. Hahn. In other words, plaintiff's functioning immediately following in-patient treatment for substance abuse is not indicative of his overall work abilities, and his memory did not emerge as a more significant problem until late 2021. Tr. 436-44, 724, 881-91. And there is some indication that the introduction of a stimulant in May 2022 allowed for more energy and focus, and better follow through with tasks. Tr. 969-70. There is thus no opinion evidence evaluating the severity or extent of plaintiff's increased memory problems currently before the Court.

Page 7 – OPINION AND ORDER

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 6th day of May, 2024.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 8 – OPINION AND ORDER